IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BROOKS CORNISH, | § | |
| | § | No. 301, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | Sussex County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 0703024261 |
| Appellee. | § | |

Submitted: January 21, 2015
Decided: January 26, 2015

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

## **O R D E R**

This 26th day of January 2015, upon consideration of the briefs of the parties and the record below, it appears to the Court that:

(1) Defendant-below/Appellant Brooks Cornish ("Cornish") argues that the Superior Court erred for two reasons when it denied his motion to modify his sentence. First, he argues that evidence presented against him at the violation of probation hearing ("VOP Hearing") violated his constitutional rights, prejudiced his defense and ultimately affected his sentencing. Second, he argues that the court considered testimony containing discrepancies and unreliable evidence in light of misconduct discovered at the Office of the Chief Medical Examiner (the "OCME"). We disagree with both of Cornish's claims and affirm.

(2) In December 2007, Cornish pled guilty to Robbery First Degree, Assault Second Degree, Theft of a Firearm, Conspiracy Second Degree, and Assault Third Degree. Cornish was sentenced to a total of twenty-nine years at Level V incarceration, suspended after four years with successful completion of a residential substance abuse treatment program, followed by three years of Level III probation. After completing his Level V incarceration sentence and the substance abuse treatment program, Cornish was released to Level III probation on May 16, 2011.

(3) On March 25, 2012, Cornish was arrested and charged with Possession of Marijuana and Resisting Arrest. Cornish pled guilty to Resisting Arrest and the State entered a *nolle prosequi* on the Possession of Marijuana. On July 13, 2012, because Cornish had violated his probation, the Superior Court sentenced him to a total of eighteen years at Level V incarceration, suspended for three years of Level III probation.[1]

(4) On February 18, 2013, Cornish was arrested and charged with Drug Dealing after selling heroin to an undercover detective on January 23, 2013. The probation office filed a violation of probation against Cornish for Failure to Abide by Curfew, Possession of a Controlled Substance and committing a new crime.

---

[1] On January 10, 2013, Cornish was arrested and charged with Possession of Marijuana with an Aggravating Factor. The State entered a *nolle prosequi* to this charge on March 4, 2013.

2

Cornish failed to appear at the VOP Hearing, and a warrant was issued for his arrest.

(5) Cornish was arrested on November 12, 2013. In the meantime, Cornish had been charged with additional offenses for Disregarding a Police Officer's Signal, Endangering the Welfare of a Child, Resisting Arrest, and Vehicular Assault Third Degree. Cornish pled guilty to Resisting Arrest, and was sentenced to one year of Level V incarceration, suspended for one year of Level II probation.

(6) On December 20, 2013, the probation office filed a new violation report against Cornish. The State alleged, *inter alia*, that Cornish failed to update his residency, violated his no-contact order, failed to pay in accordance with a payment plan, violated his curfew, and violated the zero tolerance for drugs provision of his 2012 VOP Sentence Order.

(7) The VOP Hearing was held on February 4, 2014. At the time of the hearing, the heroin drug dealing charge was still pending in the Superior Court. During the hearing, the trial court considered the testimony of Detective Dallas Reynolds who testified that he purchased heroin from Cornish.[2] The court also considered information provided by Probation Officer Glenn, who informed the court that Cornish had violated the terms of his probation. After conducting the

[2] The court found by a preponderance of the evidence that Cornish could be found guilty of dealing heroin.

3

VOP Hearing, the trial court sentenced Cornish to a total of seventeen years and ten months at Level V incarceration, suspended after six years for one year of Level IV work release, followed by eighteen months of Level III probation.[3]

(8) On March 18, 2014, the State informed Cornish that an investigation at the OCME revealed that certain drug evidence had been compromised. But the State also noted that it had "no information to believe that drug evidence related to [Cornish] ha[d] been tampered with at this time." Regardless, the State entered a *nolle proseui* on the Drug Dealing charge against Cornish. Cornish then filed a motion to reduce his sentence pursuant to Superior Court Rule 35(b). The Superior Court denied Cornish's motion.

(9) We review alleged infringements of constitutional rights *de novo*.[4] Cornish argues that the State suppressed evidence in violation of *Brady v. Maryland*[5] regarding the OCME investigation concerning compromised evidence. Cornish argues that the evidence concerning the OCME investigation was favorable to him because it was impeaching. To convict him of Drug Dealing, Cornish contends that the State had to offer evidence that the substance sold was heroin and that there were no material gaps in the chain of custody. Cornish argues that the suppression prejudiced his ability to cross-examine and challenge

---

[3] Cornish did not appeal the trial court's findings or sentence.

[4] *Moore v. State*, 15 A.3d 1240, 1244 (Del. 2011) (citing *Harris v. State*, 956 A.2d 1273, 1275 (Del. 2008)).

[5] 373 U.S. 83 (1963).

the drug evidence that formed a basis for his sentence. The State responds that Cornish's argument is waived since Cornish did not argue at the trial court below that there had been a *Brady* violation.

(10) Cornish learned of the OCME investigation from a letter dated March 18, 2014.[6] This letter was sent more than thirty days after the February 2, 2014, VOP Hearing. Accordingly, Cornish was not aware of the OCME investigation at the time of the hearing. Further, he could not have filed a direct appeal because the time to challenge the ruling at the VOP Hearing had expired. But in his motion to modify his sentence Cornish did challenge the decision against him on the grounds that he did not have a fair opportunity to defend against the violation of probation claims because the State did not inform him of the OCME investigation and the potential for compromised evidence. Accordingly, we find that Cornish did not waive this argument, insofar as it applies to the motion to modify his sentence.

(11) A *Brady* violation consists of three elements: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that

---

[6] In February 2014, the Delaware State Police and the Department of Justice began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME. As we observed in *Brown v. State*, No. 178, 2014 (Del. Jan. 23, 2015), the investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired. "There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions." *Id.* at *8.

5

evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[7] The State's failure to disclose exculpatory of evidence does not alone constitute a *Brady* violation.[8] "The State must release evidence only when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"[9]

(12) Cornish's reliance on *Brady* is misplaced for two reasons. First, there was no indication that the evidence used against Cornish was compromised. In fact, the letter sent to Cornish specifically indicated that the State had no information to believe that drug evidence related to Cornish had been compromised. Second, the VOP Hearing was not a proceeding to convict Cornish for Drug Dealing.[10] At the hearing, the court was concerned only with the question of whether Cornish violated the terms of his probation. A *Brady* violation is substantiated when there is a reasonable probability that the result would be different if the evidence had been disclosed.[11] Nothing suggests that had the trial court been aware of the investigation of the OCME and the discovery of

---

[7] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

[8] *See id.*

[9] *Id.* (citing *Jackson v. State,* 770 A.2d 506, 516 (Del. 2001)); *see also U.S. v. Bagley*, 473 U.S. 667, 682 (1985) (considering the ". . . reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.").

[10] The trial court stated, "I find by a preponderance of the evidence that Mr. Cornish is guilty of delivery of heroin or certainly could be found guilty of that offense. That's not the point of this hearing, but there's enough evidence to make that finding."

[11] *See Starling*, 882 A.2d at 756.

impropriety, the outcome would have been different -- especially since there was no information to suggest that any of the compromised evidence involved Cornish's case. Accordingly, Cornish's first claim is without merit.

(13) As to Cornish's second claim, we review a trial court's decision to deny a motion for modification of a sentence for an abuse of discretion.[12] Cornish argues that trial court abused its discretion when it denied his request to modify his sentence in light of inconsistencies surrounding the testimony of the detective involved with the undercover drug purchase.[13] Cornish also contends that the trial court imposed a sentence that exceeded the guidelines in the Delaware Sentencing Accountability Commission Benchbook.[14] The State responds that the trial court did not abuse its discretion in denying Cornish's motion to modify sentence because the trial court took into account appropriate evidence, and sentenced Cornish within the statutory guidelines.

---

[12] *State v. Lewis*, 797 A.2d 1198, 1202 (Del. 2002) ("The test is not whether the reviewing court would have ruled otherwise but whether the trial court acted within a zone of reasonableness or stayed within 'a range of choice.'" (citing *Kern v. TXO Production Corp.*, 738 F.2d 968, 969 (8th Cir. 1984)).

[13] Detective Reynolds testified that he placed a call to a phone number that he could not confirm was linked to Cornish. He indicated that the person he purchased heroin from had black hair, but in his report, he indicated that the individual had brown hair. There was no audio or video recording of the surveillance during the meeting. The serial numbers of the money that Detective Reynolds exchanged were recorded, but Cornish was never found in possession of that money. Further, Detective Reynolds indicated that the bags containing the heroin were stamped "BET," consistent with the evidence sheet. But in his police report, Detective Reynolds indicates that the bags were stamped "WMD."

[14] Cornish argues that he was found in violation of probation related to his Robbery First Degree sentence and was sentenced to serve six years of Level V incarceration for that offense. The SENTAC guidelines call for a sentence of 2-5 years of Level V incarceration for that offense.

(14)  Cornish made a motion for a reduction of his sentence pursuant to Superior Court Criminal Rule 35(b).[15]  Rule 35(b) gives a sentencing judge "considerable discretion over the appropriate grounds for a reduction of sentence."[16]

(15)  "[I]n reviewing a sentence within statutory limits, this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability."[17]  The record below shows that Detective Reynolds' testimony met the standard of "minimal indicium of reliability" since he testified to arranging a call to purchase heroin from Cornish, he identified Cornish in court, the substance sold to him was field tested as heroin, and Cornish admitted after his arrest that he had sold heroin in the past.  Because Detective Reynolds' testimony was substantiated as being more than mere

---

[15] DEL. SUPER. CT. CRIM. R. 35(b) provides that:
> The court may reduce a sentence of imprisonment on a motion made within 90 days after the sentence is imposed.  This period shall not be interrupted or extended by an appeal, except that a motion may be made within 90 days of the imposition of sentence after remand for a new trial or for resentencing.  The court may decide the motion or defer decision while an appeal is pending.  The court will consider an application made more than 90 days after the imposition of sentence only in extraordinary circumstances or pursuant to 11 *Del. C.* § 4217.  The court will not consider repetitive requests for reduction of sentence.  The court may suspend the costs or fine, or reduce the fine or term or conditions of partial confinement or probation, at any time.  A motion for reduction of sentence will be considered without presentation, hearing or argument unless otherwise ordered by the court.

[16] *Lewis*, 797 A.2d at 1201.

[17] *Mayes v. State*, 604 A.2d 839, 843 (Del. 1991).

allegations, the trial court did not abuse its discretion when it considered the drug dealing charge in determining Cornish's sentence.[18]

(16) Further, the trial court did not abuse its discretion when it sentenced Cornish to six years of Level V incarceration for his probation violations. Once a defendant violates his probation, the Superior Court has the authority to make the defendant serve the sentence originally imposed or any lesser sentence.[19] Cornish had eighteen years of Level V incarceration time remaining on his sentence that the Court could have reinstated against him. As a result, the sentence the trial court imposed was appropriate. Accordingly, Cornish's second claim is also without merit.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[18] *Mayes*, 604 A.2d at 843 ("Our task, therefore, is to review the disputed information contained in the presentence report upon which the court relied and determine whether this information met the test of some minimal indicium of reliability beyond mere allegation." (citations omitted)).

[19] *See State v. Sloman*, 886 A.2d 1257, 1260 (Del. 2005) (citing 11 *Del. C.* § 4334(c)).

9